Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM MILLER, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| RUMBLEON, INC., ADAM ALEXANDER, DENMAR J. DIXON, RICHARD A. GRAY JR., PETER LEVY, MICHAEL MARCHLIK, and KEVIN WESTFALL, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff William Miller ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against RumbleON, Inc. ("RumbleON" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of RumbleON and RideNow.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District, including participating in trade shows in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of RumbleON common stock.

7.      Defendant RumbleON operates an e-commerce platform that aggregates and distributes pre-owned vehicles to and from consumers and dealers in North America. The

Company is incorporated in Nevada. The Company's common stock trades on the NASDAQ under the ticker symbol, "RMBL."

8.      Defendant Adam Alexander ("Alexander") is a director of the Company.

9.      Defendant Denmar J. Dixon ("Dixon") is a director of the Company.

10.     Defendant Richard A. Gray Jr. ("Gray") is a director of the Company.

11.     Defendant Peter Levy ("Levy") is a director of the Company.

12.     Defendant Michael Marchlik ("Marchlik") is a director of the Company.

13.     Defendant Kevin Westfall ("Westfall") is a director of the Company.

14.     Defendants Alexander, Dixon, Gray, Levy, Marchlik, and Westfall are collectively referred to herein as the "Individual Defendants."

15.     Defendants RumbleOn and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

16.     On March 15, 2021, RumbleOn and RideNow announced that they had entered into a definitive merger/equity purchase agreement. Under the terms of the definitive agreement, RumbleOn will combine with up to 46 entities operating under the RideNow brand for a total consideration of up to $575.4 million, consisting of $400.4 million of cash and approximately 5.8 million shares of RumbleOn Class B Common Stock. RumbleOn will finance the cash consideration through a combination of up to $280.0 million of debt and the remainder through the issuance of new equity.

17.     The press release announcing the Proposed Transaction states, in pertinent part:

**RumbleOn and RideNow Announce Definitive Agreement to Combine Companies**

*Combination to Form the First Omnichannel Customer Experience in Powersports in North America, Delivering an Unparalleled Solution to Powersports Enthusiasts*

- *Transaction to Create Dominant Publicly Traded Omnichannel Powersports Platform with a Total Addressable Market of $100B+*
- *Pro Forma company sold more than 63,000 vehicles in 2020, generating revenue of approximately $1.3 billion, net income of approximately $65.3 million and adjusted EBITDA of approximately $90.8 million.[1] Business combination expected to propel revenue growth and drive meaningful cost synergies*
- *Technology-first platform offering best-in-class customer experience; Powersports enthusiasts can receive cash offers, buy, sell, trade or finance without leaving their home*
- *$575.4 million RideNow purchase price to be paid $400.4 million in cash and $175.0 million in RumbleOn Class B common stock; Up to $280.0 million of cash consideration to be funded via new debt financing committed by funds managed by Oaktree Capital Management, L.P. ("Oaktree")*
- *Management of combined company to host a conference call today, March 15, 2021, at 8:30am ET*

March 15, 2021 07:22 AM Eastern Daylight Time

DALLAS & CHANDLER, Ariz.--(BUSINESS WIRE)--RumbleOn, Inc. (NASDAQ: RMBL), an ecommerce company using innovative technology to aggregate and distribute pre-owned vehicles to and from both consumers and dealers, and the nation's largest powersports dealer, RideNow, today announced they have entered into a definitive merger/equity purchase agreement, creating the only omnichannel customer experience in powersports and the largest publicly traded powersports dealership platform. The integration of RideNow's extensive footprint and strong retail brand with RumbleOn's technology platform will transform the nation's largest powersports dealer into the first - and only - omnichannel powersports platform in North America.

Together, the combined company will have a dominant position in a $100+ billion market. The end-to-end platform will enable the combined company to reach more consumers in a secularly growing – yet still highly fragmented market, that is benefitting from changing consumer behavior. The transaction is expected to propel revenue growth and drive meaningful cost synergies, leading to improved monetization and margin expansion.

\*      \*      \*

**Transaction Details**

Under the terms of the definitive agreement, RumbleOn will combine with up to 46 entities operating under the RideNow brand for a total consideration of up to $575.4 million, consisting of $400.4 million of cash and approximately 5.8 million shares of RumbleOn Class B Common Stock. RumbleOn will finance the cash consideration through a combination of up to $280.0 million of debt and the remainder through the issuance of new equity. RumbleOn has entered into a commitment letter with Oaktree to provide for the debt financing, subject to certain conditions. The number of shares to be issued to RideNow is subject to increase as described in the definitive agreement. The transaction is subject to successful completion of the debt and equity financing, RumbleOn stockholder approval, manufacturer approval, other federal and state regulatory approvals, and other customary closing conditions as described in the definitive agreement.

Certain RideNow minority equity holders are not initially parties to the definitive agreement and some minority holders have rights of first refusal ("ROFR") with respect to the RideNow entity in which they own a stake. If any of these equity holders either decide not to sell their interests to the Company or to exercise their ROFR, RumbleOn will not be able to acquire all of the equity interests of the acquired companies, or in certain cases any interests in an acquired company, and the consideration payable in the business combination will be correspondingly reduced. RideNow anticipates that all minority owners will participate in the business combination and that no minority owners will exercise their ROFR, but there is no assurance this will occur.

Upon closing, the RideNow and RumbleOn executive teams will join their combined 150+ years of vehicle retail experience. Each member of the combined company senior management team will enter into three year Executive Employment Agreements upon closing. Messrs. Tkach and Coulter will also join the RumbleOn Board of Directors.

RumbleOn and RideNow expect to close the business combination during the second or third quarter of 2021.

B. Riley Securities, a subsidiary of B. Riley Financial Inc., is acting as exclusive financial advisor to RumbleOn and sole debt placement agent in conjunction with the transaction.

\*       \*       \*

**About RumbleOn**

Founded in 2017, RumbleOn (NASDAQ: RMBL) is an ecommerce company using innovative technology to aggregate and distribute pre-owned automotive and powersport vehicles to and from both consumers and dealers, 100% online.

RumbleOn is disrupting the pre-owned vehicle supply chain by providing dealers with technology solutions such as virtual inventory, and a 24/7 distribution platform, and consumers with an efficient, timely and transparent transaction experience, without leaving home. Whether buying, selling, trading or financing a vehicle, RumbleOn enables dealers and consumers to transact without geographic boundaries in a transparent, fast and friction free experience. For more information, please visit http://www.rumbleon.com.

**About RideNow**

Founded in 1983, RideNow has grown into the largest powersports retailer group in the United States through its dealership consolidation strategy. RideNow compliments its vehicle sales with complete parts, service, accessories, and after sales offerings. For more information, please visit https://www.ridenow.com.

18.     On July 1, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Proxy Statement, which recommends that RumbleOn shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) RumbleOn's and RideNow's financial projections; (ii) the financial analyses performed by RumbleOn's financial advisor, B. Riley Securities, Inc. ("B. Riley"), in connection with its fairness opinion; (iii) potential conflicts of interest involving B. Riley; and (iv) the sales process leading up to the Proposed Transaction.

20.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendations of the Board; (ii) Background of the Transaction; (iii) Reasons for the Transaction; (iv) Opinion of Financial Advisor; and (v) Certain Projected Financial Information.

21.     Unless and until the material misstatements and omissions (referenced below) are remedied before the July 30, 2021 shareholder vote on the Proposed Transaction, RumbleOn

shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning RumbleOn's and RideNow's Financial Projections**

22.     The Proxy Statement omits material information concerning RumbleOn's and RideNow's financial projections.

23.     The Proxy Statement provides that, in connection with its fairness opinion, "B. Riley reviewed and considered . . . historical and projected financial data as well as certain operating and financial information (including both audited and internally prepared information) relating to RumbleOn and RideNow's businesses, all as prepared and provided by management of RumbleOn and RideNow, from which B. Riley developed discounted cash flow ("DCF") analyses for both RumbleOn and RideNow on a stand-alone basis[.]" *See* Proxy Statement at 61.

24.     The Proxy Statement, however, fails to disclose any of RumbleOn's financial projections, despite the fact that such projections were prepared by RumbleOn's management and were relied upon by B. Riley in connection with its fairness opinion and related financial analyses. This information is further material as RumbleOn shareholders are expected to own approximately 27.4% of the outstanding shares of the combined company, but without the Company's financial projections, RumbleOn shareholders cannot adequately evaluate and assess the value of RumbleOn or the combined company.

25.     The Proxy Statement provides that "RideNow management provided to the Company its non-public, five-year internal financial forecast regarding RideNow's anticipated future operations for the years ending December 31, 2021 through December 31, 2025, which the Company subsequently provided to B. Riley with certain adjustments made by Company

management, which were based on the Company's due diligence of RideNow" (the "RideNow Projections").

26.     With respect to the RideNow Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, and (iii) Net Income; (2) the adjustments made to the RideNow Projections by RumbleOn management; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

29.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.   Material Omissions Concerning B. Riley's Analyses**

30.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by B. Riley.

31.     With respect to B. Riley's "*Selected Public Company Trading Comparables Analysis*" and "*Selected Precedent Transaction Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction B. Riley observed in its analyses.

32.     The Proxy Statement fails to disclose the following concerning B. Riley's "*DCF Analysis*": (1) the projected unlevered free cash flows of RideNow, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) range of terminal multiples of 8.0x to 10.0x; and (ii) a range of discount rates of 23.0% to 30.0%; and (3) RideNow's cost of debt.

33.     The valuation methods, underlying assumptions, and key inputs used by B. Riley in rendering its purported fairness opinion must be fairly disclosed to RumbleOn shareholders. The description of B. Riley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above,

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 19, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

RumbleOn shareholders are unable to fully understand B. Riley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving B. Riley

34.     The Proxy Statement omits material information concerning potential conflicts of interest involving B. Riley.

35.     The Proxy Statement fails to disclose the timing and nature of the past services B. Riley and/or its affiliates provided RumbleOn, RideNow, and/or their affiliates, including the amount of compensation B. Riley received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

36.     The Proxy Statement provides that "B. Riley is expected to participate in the Transaction Equity Raise and will receive fees related thereto."

37.     The Proxy Statement, however, fails to disclose the amount of compensation B. Riley received or expects to receive in connection with its participation in the "Transaction Equity Raise."

38.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4.     Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

40.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

41.     The Proxy Statement provides that "RumbleOn entered into a Non-Disclosure and Confidentiality Agreement with SPAC on October 2, 2020" and then "RumbleOn, RideNow, and SPAC entered into a Tri-Party Non-Disclosure and Confidentiality Agreement on November 2, 2020 to provide primarily for diligence by the parties of each other."

42.     The Proxy Statement, however, fails to disclose the terms of the Company's non-disclosure and confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

43.     Without this information, RumbleOn shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable RumbleOn shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

44.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 19, 2021                              Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh_____
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*